# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-11354

United States Court of Appeals
Fifth Circuit

**FILED**

December 3, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

EBOLOSE EGHOBOR, R.N., also known as Ebolose Friday Eghobor, also known as Friday Ebolose Eghobor, also known as Fred Eghobor,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before PRADO, SOUTHWICK, and GRAVES, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

In May 2014, a jury convicted Defendant–Appellant Ebolose Eghobor of one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349. We AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Ebolose "Fred" Eghobor, a registered nurse, began working as the director of nursing at PTM Healthcare Services ("PTM"), a Dallas-area home health agency. Eghobor reported directly to PTM's owner, Ferguson

No. 14-11354

Ikhile. As the director of nursing, Eghobor controlled, *inter alia*, which patients to admit for home health care.

Home health care is a form of short-term health care administered in the patient's home. Under Medicare, the federal government reimburses home health agencies that treat Medicare beneficiaries who are (1) certified as "homebound" and (2) under the care of a physician. "Homebound" means that the patient's ability to leave the home is restricted due to a serious medical condition. A beneficiary is "under the care of a physician" when the treating physician has determined that home health care is necessary. The process for admitting a patient for home health care starts with the treating physician issuing an order for such care.

In order to receive Medicare reimbursements, a home health agency must submit certain documents detailing the patient's medical condition and prognosis. One such document, the OASIS form,[1] provides a comprehensive overview of the patient's medical issues. The OASIS form, which is signed by the agency, is used by Medicare contractors to set the reimbursement amount, with more serious conditions correlating to greater reimbursement amounts. Another document, the Plan of Care, or Form 485, outlines the course of treatment and must be approved and signed by a physician before the agency can receive reimbursements.

At PTM, Eghobor and Ikhile executed a home health care scheme that defrauded Medicare. Specifically, they recruited individuals to be their patients, prepared forms that exaggerated those individuals' medical needs, and then had a physician, coconspirator Dr. Joseph Megwa, approve such treatment. By exaggerating patients' medical problems, PTM was able to

---

[1] The term "OASIS" comes from the full title of the form, Outcome and Assessment Information Set.

2

receive higher Medicare reimbursement amounts. Further, PTM's nurses would disregard the treatment prescribed by the exaggerated Plans of Care and instead provide minimal assistance to PTM's patients.

The government began to investigate PTM's billing practices and, in December 2009, two Medicare contractor investigators—including Trudy Bell, who testified at trial—visited PTM's office unannounced. Eghobor told Bell that he was in charge of reviewing OASIS forms and that he and Ikhile handled most of PTM's patient admissions. Bell was suspicious that only two employees, Ikhile and Eghobor, handled the admissions process given that PTM at times had up to 300 patients.

In October 2012, a grand jury indicted Eghobor, Ikhile, and Dr. Megwa. It charged each defendant with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 and three counts of health care fraud in violation of 18 U.S.C. §§ 2, 1347, which related to three specific claims PTM submitted to Medicare. Dr. Megwa was charged with four additional counts of making false statements relating to health care matters in violation of 18 U.S.C. § 1035. After Ikhile pled guilty and agreed to cooperate, a superseding indictment was filed against Eghobor and Dr. Megwa, charging them with the same counts as contained in the original indictment.

On April 28, 2014, the case against Dr. Megwa and Eghobor proceeded to trial. The government's witnesses included Ikhile, two Medicare beneficiaries that PTM had recruited, several law enforcement agents, and Trudy Bell, the Medicare anti-fraud investigator. The jury began deliberations on the afternoon of Tuesday, May 6, 2014. On the next day, Wednesday, May 7, the jury sent several notes to the judge. As relevant here, one note requested the transcript of Ikhile's testimony, which the court provided after no

objections were made. Later that afternoon, the judge went on the record to explain that he had received another jury note stating:

> There is no unanimous vote among the jurors on any of the counts thus far on one defendant, Eghobor. Can we continue on defendant Dr. Megwa?

The district judge told the parties that he planned to respond, "Yes, continue with your deliberations." Eghobor objected and requested either a mistrial or, alternatively, an instruction to continue deliberating only as to Dr. Megwa. The district court overruled the objection, denied Eghobor's motion for a mistrial, and responded to the jury, "Yes, continue with your deliberations."

On the morning of the third day of deliberations, Monday, May 12, the jury sent a note providing:

> On several counts, the jury cannot reach a unanimous verdict on [sic]. How should we proceed? We have exhausted deliberations on these particular counts.

In response, the court informed the parties that it would deliver an *Allen* charge[2] to the jury. Eghobor objected and again moved for a mistrial, arguing that, given the second note, the jury was clearly deadlocked as to him and that the *Allen* charge would be unduly prejudicial and coercive. The court overruled this objection, explaining that Eghobor was speculating as to the jury's division because it could be "11/1 for guilt, 11/1 the other way" and "could be on any [of the] counts." Eghobor also objected to the district court's proposed modification of the pattern *Allen* charge, which the court also overruled. The court gave the charge shortly before 11:45 a.m.

---

[2] "'Allen' refers to the case *Allen v. United States*, [164 U.S. 492] (1896). The term is used generally in reference to supplemental instructions urging a jury to forego their differences and come to a unanimous decision." *United States v. Bottom*, 638 F.2d 781, 764 n.4 (5th Cir. 1981).

No. 14-11354

Later that afternoon, the jury sent a note requesting the transcript of the testimony of Trudy Bell. Unlike with the first transcript request, Eghobor objected to providing Bell's testimony or any other testimony. Eghobor contended that the second transcript request showed that the jury was becoming dependent on the transcripts. The court overruled his objection and provided the jury with the Bell transcript around 4:00 p.m. At approximately 4:45 pm, the jury returned its verdict. It found Eghobor guilty on one count of conspiracy to commit health care fraud and not guilty on the three counts of health care fraud. It convicted Dr. Megwa on all eight counts against him.

Eghobor timely filed a post-verdict motion for acquittal or, alternatively, a new trial under Federal Rules of Criminal Procedure 29 and 33, respectively, which the district court denied. Five months after trial, in October 2014, Eghobor filed a motion for a new trial based on newly discovered evidence under Federal Rule of Criminal Procedure 33. The evidence at issue was a recording of a conversation among Eghobor's wife, Ikhile, and Ikhile's wife, which took place about one year before trial. In the motion, Eghobor averred that his wife, Bridget, had reported the conversation to his lawyer before trial, but that neither Bridget nor his lawyer were aware that Bridget's cell phone had recorded the conversation until August 2014, three months after trial. The court denied the motion.

In December 2014, the court sentenced Eghobor to 48 months imprisonment and entered final judgment. Eghobor timely appealed.

## II. DISCUSSION

On appeal, Eghobor argues the district court made five reversible errors, specifically by (1) giving the *Allen* charge, (2) providing the jury with the transcript of Bell's trial testimony, (3) committing cumulative error, (4) denying his post-verdict challenge to the sufficiency of the evidence, and (5)

5

No. 14-11354

denying his motion for a new trial based on newly discovered evidence. We address and reject each claim in turn.

## A.    The *Allen* Charge

The court reviews the use of an *Allen* charge to which the defendant objected for abuse of discretion. *United States v. Andaverde-Tiñoco*, 741 F.3d 509, 515 (5th Cir. 2013). "The relevant inquiry on appeal is whether: (1) any semantic deviation from approved Allen-charge language was so prejudicial that it requires reversal and (2) the circumstances surrounding the use of the charge were coercive." *Id*. The district court has "broad discretion to determine whether an *Allen* charge might coerce a jury." *United States v. Heath*, 970 F.2d 1397, 1406 (5th Cir. 1992).

Under the first prong of our *Allen* charge analysis, district courts are not required to recite verbatim the pattern *Allen* charge approved by this Court. The key inquiry is whether the modification was "so significant as to coerce the jury to reach its verdict." *Id*. This Court has "upheld versions of [the *Allen*] charge so long as they avoid the pitfalls of coercive deadlines, threats of marathon deliberations, or pressure for surrender of conscientiously held minority views." *United States v. Scruggs*, 583 F.2d 238, 240 (5th Cir. 1978) (quoting *United States v. Skinner*, 535 F.2d 325, 326 (5th Cir. 1976)).

In this case, Eghobor argues that the district court improperly deviated from the language of the pattern *Allen* charge by including the following additions to the pattern charge italicized below:

> You must also remember that if the evidence in the case fails to establish guilt beyond a reasonable doubt as to *a count as* [sic], the accused should have your unanimous verdict of Not Guilty *on that count. On the other hand, if the evidence establishes guilt beyond a reasonable doubt on a count as to a defendant, the verdict should be guilty on that count.*

6

*See* Fifth Circuit Pattern Jury Instructions (Criminal) § 1.45. Eghobor claims that the sentence beginning "[o]n the other hand" caused him undue prejudice by tilting the balance of the charge in the government's favor.

This deviation from the pattern charge was not an abuse of discretion. The added language explained how the burden of proof operates in a trial with multiple counts and multiple defendants. The court's modification clarified that a failure of proof "as to a count" requires an acquittal "on that count," rather than on all counts. Eghobor was not prejudiced simply because the court also stated the inverse: if the government carried its burden on one count as to a defendant, then the defendant should be guilty "on that count." Moreover, the remainder of the charge was substantively identical to the pattern *Allen* charge and thus included language that mitigates against the threat of coercion. The judge, for instance, instructed the jurors that they "may be as leisurely in [their] deliberations as the occasion may require" and that "no juror is expected to yield a conscientious opinion he or she may have as to the weight or effect of the evidence." *See United States v. Kimmel*, 777 F.2d 290, 295 (5th Cir. 1985) (upholding *Allen* charge where "the judge tempered his remarks with reminders that each juror should remain true to his own conscience").

Under the second prong of our *Allen* charge analysis, this Court evaluates "the 'totality of the circumstances' surrounding the use of the charge in assessing its coercive effect." *Andaverde-Tiñoco*, 741 F.3d at 517 (quoting *United States v. Lindell*, 881 F.2d 1313, 1321 (5th Cir. 1989)). Factors that weigh against finding coercion include where: (1) the time lapse between the charge and the jury's decision was not unduly short, *Lindell*, 881 F.2d at 1322; (2) the charge was not given "prematurely," *United States v. Garcia*, 732 F.2d 1221, 1227 (5th Cir. 1984); and (3) the jurors were not "required to deliberate for an unreasonable length of time" before the charge was given. *Kimmel*, 777 F.2d at 295.

No. 14-11354

Eghobor claims the judge improperly coerced the jury when he gave an *Allen* charge rather than declare a mistrial after receiving a second note that, according to Eghobor, stated that the jury was deadlocked as to the charges against him. We disagree. As the district court noted, Eghobor is assuming that the second note refers to him. While the first note mentioned Eghobor, the second note only stated that the jury could not reach a unanimous verdict "[o]n several counts," but it does not specify as to which defendant. Even assuming that the second deadlock note concerned Eghobor, the trial court did not abuse its discretion. This Court has consistently upheld *Allen* charges given after the jury had sent two or even three notes indicating it was deadlocked. *See, e.g.*, *United States v. Montalvo*, 495 F. App'x 391, 392 (5th Cir. 2012) (per curiam) (upholding *Allen* charge given after the jury had sent three deadlock notes over three days of deliberation); *Lindell*, 881 F.2d at 1321 (two deadlock notes).

In addition, no other indicia of coercion were present. The jury did not rush to a decision after the charge was given, but instead continued to deliberate for roughly four hours. *See Garcia*, 732 F.2d at 1227 (upholding *Allen* charge where the jury continued to deliberate for "approximately three hours" after receiving the charge). The amount of time that the jury was kept in deliberations before the court gave the charge—here, approximately two full days—was not unreasonable. *See United States v. Miles*, 360 F.3d 472, 482–83 (5th Cir. 2004) (noting that issuing an *Allen* charge four days into the jury's deliberations was not an abuse of discretion). Conversely, the charge was not given prematurely because the jury was on its third day of deliberations. *See United States v. McClatchy*, 249 F.3d 348, 353, 359 (5th Cir. 2001) (upholding *Allen* charge given after six hours of deliberations). We conclude the district court did not abuse its discretion by either deviating from the language of the pattern *Allen* charge or by deciding to give the *Allen* charge.

8

No. 14-11354

## B.     Providing the Trial Transcript to the Jury

It is a "firm rule" that the district court "has broad discretion in responding to the jury's request for the transcript of a particular witness'[s] testimony and will only be reversed upon a finding of an abuse of discretion." *United States v. Schmitt*, 748 F.2d 249, 256 (5th Cir. 1984). Though the court's discretion is broad, it cannot ignore the risk of the jury placing undue emphasis on the provided testimony. *See id.*; *United States v. Morrow*, 537 F.2d 120, 148 (5th Cir. 1976).

Other circuits also recognize that, in deciding whether to comply with a jury's request for a transcript, a district court must account for "the possibility of undue emphasis on any portion of the testimony." *United States v. Escotto*, 121 F.3d 81, 84 (2d Cir. 1997); *see also United States v. Hernandez*, 27 F.3d 1403, 1408–09 (9th Cir. 1992). In *Hernandez*, the Ninth Circuit held the trial court had abused its discretion by giving the jury the transcript of a key witness's testimony, which included the description of the suspect. 27 F.3d at 1408. In that case, the court ordered a new trial, explaining that the district court had allowed for undue emphasis of particular testimony because "[t]he jury clearly indicated by note that its final decision turned on [the witness's] testimony, specifically his description of the suspect." *Id.* at 1409.

Here, Eghobor claims that, when providing a copy of Bell's testimony, the court ignored the risk that the jury would unduly emphasize her testimony. We reject this contention for three reasons. First, Bell's complete testimony was provided to the jury, which mitigates the threat of the jury taking portions out of context. Second, the jury did not indicate why it wanted Bell's transcript or the importance it attached to it, nor does Eghobor argue that her testimony was likely critical to its decision. Indeed, Eghobor in his brief acknowledges that only a small part of Bell's testimony concerned him. This case contrasts sharply with the Ninth Circuit's decision in *Hernandez* where the jury "relayed

9

that its final decision was based on" the testimony it requested. 27 F.3d at 1405. Third, given that the Ikhile transcript had already been provided, the district court acted appropriately by treating the second request equally. During the trial, the court indicated its agreement with the government's argument that the defendants should not be able to "pick and choose" which transcripts to provide to the jury. To deny the request could be interpreted as a judicial comment on Bell's testimony.[3]

Eghobor also contends that the court, when providing the Bell transcript, erred by not including a cautionary instruction reminding the jury to consider all of the evidence as a whole and not to give undue emphasis to the provided transcript. This Court has never directly addressed whether such instructions are necessary or appropriate. Other circuits have observed that the risk of undue emphasis may be mitigated if the trial judge gives a "cautionary instruction" reminding the jury "to consider all the evidence without unduly emphasizing any portion of it." *Escotto*, 121 F.3d at 85; *accord United States v. Bertoli*, 40 F.3d 1384, 1401 (3d Cir. 1994). We agree that a cautionary instruction reminding the jury to focus on all of the evidence, while not required, should generally be included when providing a trial transcript to the jury. *Bertoli*, 40 F.3d at 1401.

Importantly, in this case, Eghobor did not request such an instruction during the trial. He instead asserted a blanket objection to providing the Bell transcript and any other transcripts. Because his objection did not put the

---

[3] Eghobor also attempts to justify his reason for objecting to the Bell transcript but not the Ikhile transcript on the basis that Ikhile, unlike Bell, spoke with an accent. This argument, which was not raised to the district court, misses the mark. Our inquiry focuses on what evidence, if any, suggests that the jury would give undue emphasis to the Bell transcript. It is unclear how Eghobor's speculation as to why the jury requested the transcript of another witness, Ikhile, has bearing on whether the jury was going to unduly emphasize the Bell transcript.

district court on notice as to whether it should include a cautionary instruction, we review his claim for plain error. *See United States v. Sanchez-Espinal*, 762 F.3d 425, 429 (5th Cir. 2014) (holding that plain error review applies where a party fails to raise an objection "specific enough to put the district court on notice of potential issues for appeal and allow the district court to correct itself"); *Escotto*, 121 F.3d at 85 (citing Fed. R. Crim. P. 51).

"Plain error exists if (1) there is an error, (2) the error is plain, . . . (3) the error affect[s] substantial rights and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Garcia-Carrillo*, 749 F.3d 376, 378 (5th Cir. 2014) (alterations in original) (quoting *Henderson v. United States*, 133 S. Ct. 1121, 1126–27 (2013)). Here, the district court did not err because Eghobor failed to establish that the court ignored a risk of undue emphasis. Further, even assuming the district court erred, such error was not plain. This Court, as noted, has never expressly required trial judges to include cautionary instructions when providing the transcript. Other circuits similarly have not mandated them, although they acknowledge such instructions are "advisable." *Escotto*, 121 F.3d at 85; *Bertoli*, 40 F.3d at 1401. Eghobor also cannot show that his "substantial rights were affected"—that is, the lack of cautionary instructions "affected the outcome of the district court proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). The jury had previously been instructed to consider all of the evidence and Eghobor has not presented evidence to overcome the presumption that the jury followed these instructions. *See United States v. Millsaps*, 157 F.3d 989, 993 (5th Cir. 1998) (per curiam). Lastly, Eghobor fails to explain how the lack of a cautionary instruction casts doubt on the integrity of the judicial proceedings.

Accordingly, we conclude that the district court neither abused its discretion in complying with the jury's request for the second transcript nor

committed plain error by not giving a cautionary instruction when providing the transcript.

## C.    Cumulative Error

The cumulative error doctrine "provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (en banc) (quoting *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998)). "The doctrine justifies reversal only in the unusual case in which synergistic or repetitive error violates the defendant's constitutional right to a fair trial." *Id.* The defendant's "[a]llegations of non-errors do not play a role in cumulative error analysis since there is nothing to accumulate." *United States v. Cervantes,* 706 F.3d 603, 619 (5th Cir. 2013). The cumulative error doctrine does not apply here because the district court did not err and, as such, there are no errors that we could aggregate to find cumulative error.

## D.    The Sufficiency of the Evidence

This Court reviews de novo a preserved challenge to the sufficiency of the evidence. *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012). Our review, however, is constrained by the rule that we "view all evidence, whether circumstantial or direct, in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict" and affirm if "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *United States v. Ford,* 558 F.3d 371, 375 (5th Cir. 2009)). To be sufficient, the evidence "need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Id.* (quoting *United States v. Moreno*, 185 F.3d 465, 471 (5th Cir. 1999)). Moreover, the jury "retains the sole authority to weigh any conflicting evidence and to evaluate the

No. 14-11354

credibility of the witnesses." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001).

To sustain a conviction for conspiracy to commit health care fraud, a reasonable trier of fact must be able to conclude beyond a reasonable doubt that (1) "two or more persons made an agreement to commit health care fraud;" (2) "that the defendant knew the unlawful purpose of the agreement;" and (3) "that the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose." *Grant*, 683 F.3d at 643 (citing 18 U.S.C. §§ 1347, 1349). "The agreement between conspirators may be silent and need not be formal or spoken." *Id.* "[V]oluntary participation may be inferred from a collection of circumstances, and knowledge may be inferred from surrounding circumstances." *Id.* (quoting *United States v. Stephens*, 571 F.3d 401, 404 (5th Cir. 2009)).

The evidence presented at trial was legally sufficient to show that Eghobor conspired with Ikhile to defraud Medicare by preparing falsified documents that enabled PTM to overcharge Medicare for unnecessary home health services. The government's primary witness was Ikhile, PTM's owner.[4] At trial, he testified at length as to the scheme, including that Eghobor was his "right-hand" man at PTM who oversaw PTM's patient admission process. In particular, he testified that Eghobor admitted patients into PTM by falsifying

---

[4] On appeal, Eghobor attacks Ikhile's credibility, contending that Ikhile had lied in the past and was lying at trial in order to reduce his own sentence. However, the court cannot make credibility determinations when reviewing a challenge to the sufficiency of the evidence. *Loe*, 262 F.3d at 432. Indeed, a "defendant may be convicted on the uncorroborated testimony of a coconspirator who has accepted a plea bargain unless the coconspirator's testimony is incredible." *United States v. Valdez*, 453 F.3d 252, 257 (5th Cir. 2006) (quoting *United States v. Villegas-Rodriguez*, 171 F.3d 224, 228 (5th Cir. 1999)). "Testimony is incredible . . . only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature." *Id.* (quoting *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994)). In this case, Ikhile's testimony was neither incredible in nature nor, equally important, uncorroborated.

No. 14-11354

OASIS forms and Plans of Care. He also stated that Eghobor would create physician's orders prescribing home health care that Dr. Megwa would then sign, which were used for obtaining Medicare reimbursements. Upon being shown a specific physician's order, Ikhile testified that Eghobor created it and not the physician.

The government also submitted evidence that corroborated Ikhile's testimony, including multiple documents signed by Eghobor that a reasonable jury could conclude were falsified. In particular, the government introduced documents relating to two individuals that PTM had recruited as patients. For one such individual, Mary Smith, the government introduced OASIS and Plan of Care forms signed by Eghobor, which claimed that Smith had arthritis and incontinence. At trial, Smith testified that she did not have these ailments and had been recruited to be a PTM patient while shopping at a grocery store. For another individual, Mattie Durham, the government introduced a Plan of Care and OASIS form, both signed by Eghobor, that provided that she was incontinent and suffering from paralysis. The OASIS form also stated that she was unable to feed herself. Durham's trial testimony, however, indicated that she routinely walked around with her dogs, fed and cooked for herself, and never had incontinence issues. A rational trier of fact that credited this testimony could infer that Eghobor had knowledge of the falsified nature of the forms that he signed.[5] We conclude that the evidence at trial was sufficient to prove that Eghobor knew of and participated in PTM's home health care fraud.

---

[5] The jury acquitted Eghobor of three counts of health care fraud related to specific three claims submitted by PTM. Of those three counts, one count was based on PTM's treatment of Mary Smith and another count was based on PTM's treatment of Mattie Durham. Eghobor claims that the jury's acquittal on the three counts of health care fraud proves that Smith's and Durham's patient files were not connected to Eghobor and that, as a result, these documents cannot be considered as evidence in support of the conspiracy conviction. We disagree and consider all the trial evidence separately when determining the sufficiency of the evidence as to each count. *See United States v. Swaim*, 757 F.2d 1530, 1536

No. 14-11354

## E.     The Motion for a New Trial Based on Newly Discovered Evidence

This Court reviews for abuse of discretion the district court's denial of a motion for a new trial based on newly discovered evidence. *United States v. McRae*, 795 F.3d 471, 478 (5th Cir. 2015). "Generally, motions for new trial are disfavored and must be reviewed with great caution." *United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011). A defendant that moves for a new trial based on newly discovered evidence under Federal Rule of Criminal Procedure 33 must prove each of the following five so-called *Berry* factors:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.

*McRae*, 795 F.3d at 478.

The trial court did not abuse its discretion in denying Eghobor's motion for a new trial based on the recording of a conversation among Eghobor's wife, Ikhile, and Ikhile's wife. As to the third *Berry* factor, the statement does not have an "evidentiary purpose other than to impeach" trial testimony. *United States v. Villarreal*, 324 F.3d 319, 326 (5th Cir. 2003). Eghobor argues that Ikhile's statements contained in the recording, which purportedly contradict Ikhile's trial testimony, are not merely impeaching because they show that Ikhile intentionally lied at trial and prove that he was biased against Eghobor. The case law, however, is against him. Evidence that "only casts doubt on the veracity" of a witness's testimony and "demonstrates a bias on the part of [that witness]" is "mere impeachment evidence" that is insufficient to entitle a

---

(5th Cir. 1985) ("[J]uries in criminal cases are free to render verdicts on the conspiracy and the underlying felony counts that are inconsistent or even the result of mistake or compromise. Each count must be considered separately, and, if the verdict is supported by evidence, it may stand." (footnotes omitted)).

defendant to a new trial. *United States v. Holmes*, 406 F.3d 337, 360 (5th Cir. 2005); *see United States v. Garcia-Esparza*, 388 F. App'x 407, 408 (5th Cir. 2010) (per curiam) (noting that evidence introduced to show a witness "lied extensively on the witness stand . . . is impeaching and not a basis for a new trial"). Further, Eghobor has not explained how Ikhile's out-of-court statements, which were allegedly made in a parking lot, could have been admitted at trial except as a prior inconsistent statement offered for impeachment purposes only. *See United States v. St. Junius*, 739 F.3d 193, 202 (5th Cir. 2013) (explaining that unsworn prior inconsistent statements may be used to impeach even if they are inadmissible as substantive evidence).

As to the final *Berry* factor, the evidence would not "probably produce an acquittal." Eghobor focuses on two of Ikhile's statements from the recorded conversation but neither statement contradicts nor seriously undermines Ikhile's trial testimony. The first statement is Ikhile's one-word response, "Yeah," to a lengthy, compound statement by Eghobor's wife, Bridget, in which she expresses distress over her husband's incarceration and concludes by saying, "Fred would never sign anything that is not correct."[6] But it is not at all clear whether Ikhile's response, "Yeah," was intended to show agreement

---

[6] In his motion, Eghobor provided a transcript of the recording. The portion of the transcript on which Eghobor relies provides:

Ms. Eghobor:  And he said—he told me—and I was kind of shocked. He said the deal is you cannot testify against the other client—or the—or that codefendant thing, including my husband. Then I am confused. I don't know what—I thought she was aware of the whole thing. That's why I said, okay, is there anything else that my husband did in the company that I didn't know because I don't know why Fred is in jail. I don't understand the whole thing. I am confused. I am—just in the—I am confused because I don't go to work with him (indiscernible). The husband that I know is the most honest man I know. Fred would never sign anything that is not correct.

Mr. Ikhile:    Yeah.

with any of Bridget's preceding statement. Thus, Ikhile's response does not plainly undercut his trial testimony concerning Eghobor's fraudulent conduct.

In the second statement, Ikhile said, "Fred work [sic] for me. At no point did Fred ever give money to Megwa." Eghobor claims that this statement contradicts the trial testimony in which, according to Eghobor, Ikhile stated that Eghobor had given money to Dr. Megwa as part of their conspiracy. However, Ikhile made no such statement at trial. In the portion of the trial testimony Eghobor cites, Ikhile testified that although he recognized Eghobor's signature on a copy of a check written to Dr. Megwa that the government introduced at trial, he was not aware that Eghobor was writing checks to Dr. Megwa. Eghobor fails to explain how Ikhile's out-of-court statement that does not contradict Ikhile's lengthy trial testimony could probably produce an acquittal. The district court did not abuse its discretion in denying Eghobor's motion for a new trial based on the recording.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Eghobor's conviction.