# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-11344

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2016

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

JOSEPH MEGWA, MD,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CR-312-1

Before KING, JOLLY, and ELROD, Circuit Judges.

PER CURIAM:*

Dr. Joseph Megwa appeals his conviction for healthcare fraud and related crimes after being found guilty by a jury. Two of his challenges have already been substantially resolved during the appeal of a codefendant, *United States v. Eghobor*, 812 F.3d 352 (5th Cir. 2015). Based on that appeal and our review of the record, we affirm the district court's judgment in all respects.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-11344

I.

Dr. Megwa was employed as the medical director of PTM Healthcare Services ("PTM"), a company that provides home health care.[1] PTM was owned by Ferguson Ikhile.

In order to receive Medicare reimbursements, a home health provider must submit certain documents. One document, the OASIS form, details the patient's medical issues and must be signed by the company. Another document, the Plan of Care, or Form 485, outlines the course of treatment and must be approved and signed by a physician before the agency can receive reimbursements.

Under the ownership of Ikhile, PTM executed a home health care scheme that defrauded Medicare. Specifically, it recruited individuals to be patients, prepared forms that exaggerated those individuals' medical needs, and then had Dr. Megwa approve treatment. By exaggerating patients' medical problems, PTM was able to receive higher Medicare reimbursement amounts.

In October 2012, a grand jury indicted Megwa, Ikhile, and Ebolose Eghobor (the director of nursing at PTM). It charged Megwa with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, three counts of health care fraud in violation of 18 U.S.C. §§ 2, 1347 (which related to three specific claims PTM submitted to Medicare), and four counts of making false statements relating to health care matters in violation of 18 U.S.C. § 1035. Ikhile pled guilty and agreed to testify against the remaining two defendants.

On April 28, 2014, the case against Megwa and Eghobor proceeded to trial. The government's witnesses included Ikhile, two Medicare beneficiaries

---

[1] Home health care is a form of short-term health care administered in the patient's home.

## No. 14-11344

that PTM had recruited, several law enforcement agents, and Trudy Bell, a Medicare anti-fraud investigator. The jury heard evidence showing that Megwa's role as medical director was a sham, that he did not perform any of the duties for which he was purportedly paid, and that those payments were instead intended to reward him for signing falsified documents. The jury also heard testimony from purported patients of Dr. Megwa who had never met Megwa and did not know who he was. Additionally, the government provided evidence of numerous instances of Megwa billing Medicare for personally conducting home visits that supposedly took place on dates when Megwa was, in reality, out of the country.

The jury began deliberations on the afternoon of Tuesday, May 6, 2014. On the morning of the third day of deliberations, Monday, May 12, the jury sent a note providing:

> 1.    On several counts, the jury cannot reach a unanimous verdict on [sic]. How should we proceed? We have exhausted deliberations on these particular counts.

(This was the second jury note indicating that the jury was having difficulty reaching a unanimous verdict.) In response, the court decided to deliver an *Allen* charge.[2] Eghobor objected, arguing that the *Allen* charge would be unduly prejudicial and coercive; Megwa joined in this objection. The court overruled the objection. Eghobor also objected to the district court's proposed modification of the pattern *Allen* charge, which the court also overruled.

At approximately 4:45 pm, the jury returned its verdict. It convicted Dr. Megwa on all eight counts against him.

---

[2] An *Allen* charge is a charge urging the jury to overcome their differences and reach a unanimous verdict.

No. 14-11344

Megwa timely filed a post-verdict motion for acquittal, which the district court denied. Five months after trial, Eghobor filed a motion for a new trial based on newly discovered evidence under Federal Rule of Criminal Procedure 33. The evidence at issue was a recording of a conversation among Eghobor's wife, Ikhile, and Ikhile's wife, which took place about one year before trial. Megwa filed a one-page motion to join Eghobor's motion for a new trial. The court denied both motions and subsequently entered final judgment against both Megwa and Eghobor.

Both Megwa and Eghobor timely appealed. Eghobor's appeal was severed from Megwa's and was resolved in *United States v. Eghobor*, 812 F.3d 352 (5th Cir. 2015). Relevant to Megwa, Eghobor also challenged the *Allen* charge and the denial of a new trial under Rule 33. *Eghobor* rejected both challenges and fully affirmed Eghobor's conviction.

## II.

Denial of a motion for a new trial is reviewed for an abuse of discretion. *United States v. Piazza*, 647 F.3d 559, 564 (5th Cir. 2011). Alleged indictment-related errors, such as claims of constructive amendment of the indictment, are reviewed de novo. *United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012). We review objected-to jury instructions for abuse of discretion. *United States v. St. Junius*, 739 F.3d 193, 204 (5th Cir. 2013). This Court reviews the use of an *Allen* charge for abuse of discretion. *United States v. Lindell*, 881 F.2d 1313, 1320 (5th Cir. 1989). When evaluating a challenge to the sufficiency of the evidence, we will "affirm a conviction if, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc).

No. 14-11344

III.

We begin with the two issues largely resolved by *Eghobor*.  First, the *Allen* charge.  Megwa objected to the *Allen* charge on exactly the same grounds as his codefendant, Eghobor: that the charge improperly deviated from the Fifth Circuit pattern jury instruction and that it improperly coerced a jury that had already indicated difficulty reaching a unanimous verdict.  *Eghobor* explicitly rejected each of these challenges in a published, binding opinion.  *Eghobor*, 812 F.3d at 358–59 ("This deviation from the pattern charge was not an abuse of discretion. . . .  Eghobor claims the judge improperly coerced the jury when he gave an *Allen* charge rather than declare a mistrial after receiving a second note that, according to Eghobor, stated that the jury was deadlocked as to the charges against him.  We disagree.").  Adhering to this precedent, we reject Megwa's parallel challenge.

Next, we turn to Megwa's motion based on the newly discovered evidence.  We note that Megwa did not file a motion for a new trial in the district court; instead, he filed a *motion to join* Eghobor's motion for a new trial.  Eghobor's motion for a new trial was denied, and this denial was upheld on appeal.  *Eghobor*, 812 F.3d at 364.  As a matter of logical necessity, if the district court did not err in denying Eghobor's motion, it could not have abused its discretion in denying a motion to join that doomed motion.  Accordingly, we affirm the district court's denial of Megwa's motion.

Megwa next contends that the district court abused its discretion by instructing the jury that it could convict Megwa based on his deliberate ignorance to healthcare fraud (as opposed to actual knowledge).  We have often cautioned that deliberate ignorance instructions should rarely be given.  *United States v. Kuhrt*, 788 F.3d 403, 417 (5th Cir. 2015) ("The proper role of the deliberate ignorance instruction is not as a backup or supplement in a case that hinges on a defendant's actual knowledge."), *cert. denied*, 136 S. Ct. 1376

5

No. 14-11344

(2016). District courts may permissibly instruct the jury on deliberate ignorance only

> when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference. The evidence at trial must raise two inferences: (1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposely contrived to avoid learning of the illegal conduct.

*United States v. Delgado*, 668 F.3d 219, 227 (5th Cir. 2012) (citations omitted). The government contends that it satisfied this standard.

We need not decide this issue, however, because—even assuming that the district court erred by providing the deliberate ignorance instruction—any error was harmless in light of the substantial evidence that Megwa actually knew about the illegal conduct. *See St. Junius*, 739 F.3d at 204–05 ("Even if the district court errs in its decision to give the deliberate ignorance instruction, any such error is harmless where substantial evidence of actual knowledge is presented at trial.") (citation omitted); *see also Kuhrt*, 788 F.3d at 417–18 (holding that any error was harmless); *United States v. Mendoza-Medina*, 346 F.3d 121, 135 (5th Cir. 2003) (holding that error was harmless). Accordingly, we hold that the district court did not commit reversible error in charging the jury on deliberate ignorance.[3]

Megwa also argues that the government constructively amended the indictment. The government, however, did nothing of the sort. The

---

[3] Megwa also argues that a deliberate ignorance charge is inappropriate in the complex area of healthcare law. Megwa points out that the Supreme Court had held deliberate ignorance charges to be inappropriate in cases involving willful violations of tax statutes, "due to the complexity of the tax laws." *Cheek v. United States*, 498 U.S. 192, 200 (1991). Megwa argues that healthcare laws are equally complex and, accordingly, that deliberate ignorance instructions are also inappropriate when the charged offenses are willful violations of healthcare laws. The Fifth Circuit, however, has previously approved of the use of deliberate ignorance instructions in healthcare fraud cases. *Delgado*, 668 F.3d at 228. Accordingly, Megwa's argument is foreclosed.

No. 14-11344

government charged Megwa with four counts of fraud based on four instances when Megwa fraudulently billed Medicare for home visits that he claimed to have personally conducted; in reality, Megwa was out of the country on each of those four occasions. Megwa admitted that he was out of the country on those four dates, but argued that he had not *fraudulently* billed for those home visits. According to Megwa, the bills resulted from nurses accidentally writing down Megwa's billing code instead of their own. Specifically, when questioning a government witness, Megwa asked, "For example, if someone had thousands of patients over 35 years and made four billing errors, that could be just an accident or inadvertent, couldn't it?" To rebut this argument, the government introduced evidence showing that—though it was only charging Megwa with four counts of this sort of fraud—he had committed similar billing fraud dozens of times before. The government argued that this pattern of billing fraud showed that the four charged instances were not accidental or inadvertent.

Megwa argues that admitting this evidence of uncharged misconduct amounted to a constructive amendment of his indictment. This argument is without merit. Uncharged misconduct may be inadmissible under Federal Rule of Evidence 404 (though this evidence would have been admissible to prove lack of mistake). But uncharged misconduct is not an amendment of the indictment so long as it is used to show that the defendant committed the charged offense. *United States v. Guerrero*, 768 F.3d 351, 365 (5th Cir. 2014); *see also United States v. Rosario-Diaz*, 202 F.3d 54, 71 (1st Cir. 2000) ("[E]vidence . . . ultimately offered to prove guilt of the charged offense[] effects no constructive amendment of the indictment"). Accordingly, we hold that the government did not constructively amend the indictment.

Finally, Megwa argues that the evidence presented to the jury was insufficient to support a conviction. We disagree. Below, we briefly review the evidence relevant to each count:

7

No. 14-11344

*Count 1—conspiracy to commit healthcare fraud.*

> To prove a conspiracy to commit health-care fraud in violation of 18 U.S.C. § 1349, the government must prove beyond a reasonable doubt that (1) two or more persons made an agreement to commit health care fraud; (2) that the defendant knew the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose.

*United States v. Willett,* 751 F.3d 335, 339 (5th Cir. 2014).

Megwa admitted to the jury that his codefendants conspired to commit healthcare fraud, but argued that he was an unwitting participant. Further, Megwa admits that one conspirator, Ikhile, testified of "Megwa's knowledge and intent to join the conspiracy." Megwa argues that the jury should have discounted this evidence, but this argument goes to weight and not sufficiency. Further, the government presented evidence that Megwa repeatedly signed documents saying that he had given telephonic instructions to PTM about patient care, when he was well aware that he had not spoken to PTM at all about those patients. Thus, ample evidence supports the jury's finding that Megwa willfully joined the conspiracy, with the intent to further its unlawful purpose.

*Counts 2–4—healthcare fraud*

> To prove health-care fraud in violation of 18 U.S.C. § 1347, the government must prove beyond a reasonable doubt that the defendant knowingly and willfully executed, or attempted to execute, a scheme or artifice—(1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services.

*Willett,* 751 F.3d at 339 (citations, quotation marks, and alterations omitted).

8

No. 14-11344

Ikhile testified that Megwa certified three patients who were not homebound as homebound and thereby defrauded Medicare. The government also introduced the relevant paperwork (Plans of Care), which bore Megwa's signature.

At trial, Megwa argued that each patient was genuinely homebound and thus certifying them as such was not fraudulent. But two of the patients testified at trial that they did not have the limitations outlined in the Plans of Care and that they had never met Megwa. Further, in all three instances, Megwa signed paperwork indicating that he had instructed PTM on the care of each patient via telephone, when he knew this to be false. In combination with the other evidence of Megwa's involvement in the conspiracy to defraud Medicare, this evidence sufficed for a reasonable jury to find that Megwa had engaged in healthcare fraud.

*Counts 5–8—False statements relating to healthcare matters*

To find Megwa guilty of counts five through eight, the jury had to find that Megwa "in any matter involving a health care benefit program, knowingly and willfully . . . ma[de] any materially false, fictitious, or fraudulent statements or representations, or ma[de] or use[d] any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry." 18 U.S.C. § 1035.

The government introduced evidence that Megwa submitted Medicare claims that stated he had conducted home visits on days when Megwa was out of the country. Megwa freely admitted that these claims were false, but argued to the jury that he did not *knowingly* make a false statement—he argued that those forms either accidentally listed the wrong date or accidentally listed Megwa as the provider instead of a nurse who had actually provided the care. To show that the false statements were made willfully (that is, that they were not the result of a mistake), the government introduced evidence that showed

No. 14-11344

many other instances of Megwa billing for care when he was out of the country; the government argued, in effect, that no one would have made that many mistakes without meaning to. This evidence supported the jury's guilty verdict.

## IV.

We reject each of Megwa's arguments on appeal. Accordingly, the judgment of the district court is

AFFIRMED.