# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 17-20688
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

REX DURUJI,

Defendant-Appellant

———

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CR-114-2

———

Before HIGGINBOTHAM, ELROD, and DUNCAN, Circuit Judges.

PER CURIAM:[*]

A grand jury indicted Rex Duruji on one count of conspiracy to commit health care fraud under 18 U.S.C. § 1349 (count 1), one count of conspiracy to pay healthcare kickbacks under 18 U.S.C. § 371 (count 2), and one count of aiding and abetting health care fraud under 18 U.S.C. § 2 and 18 U.S.C. § 1347 (count 3).  Following a jury trial, the district court sentenced Duruji to 37 months in prison on each count, to be served concurrently, to a supervised

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20688

release term of 3 years which he is currently serving, and to $133,443.35 in restitution. Duruji appealed.

Duruji challenges the sufficiency of the evidence as to each of the three counts of conviction. He first argues that the Government failed to introduce evidence sufficient to prove beyond a reasonable doubt that he entered into an agreement with Nkiru Ibeabuchi to commit healthcare fraud. *See* § 1349. Because Duruji moved for a judgment of acquittal at the close of evidence, we review his challenge to the sufficiency of the evidence de novo. *See United States v. Eghobor*, 812 F.3d 352, 361-62 (5th Cir. 2015). In doing so, however, we "view all evidence, whether circumstantial or direct, in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict." *Eghobor*, 812 F.3d at 362 (internal quotation marks and citation omitted).

The trial evidence showed that Duruji repeatedly worked with staff from Ibeabuchi's company, Koby Home Health (Koby), in Waco, Texas, to find and enroll new Medicare patients with Koby. In doing so, Duruji dressed and acted towards potential patients as if he were a physician capable of certifying patients for Medicare services, directed Koby's nurse to enroll patients, and assigned diagnoses for the new patients. Additionally, the evidence showed that Duruji discussed payment with a patient recruiter, sometimes paid new or re-enrolling patients, and sometimes provided money for others to pay the enrollment kickbacks. Moreover, in a conversation between Duruji and Ibeabuchi, Duruji indicated that he could bring Koby 300 Medicare patients if Ibeabuchi "cooperate[d]." Ibeabuchi responded that such a large number of enrollees would be profitable for her. The trial evidence is sufficient to show at the very least the "essential nature" of the agreement between Duruji and

No. 17-20688

Ibeabuchi and Duruji's participation in the agreed conduct. *United States v. Pofahl*, 990 F.2d 1456, 1470 (5th Cir. 1993); *see Eghobor*, 812 F.3d at 362.

The evidence supporting Duruji's participation in the healthcare fraud conspiracy equally supports the jury's conclusion that Duruji participated in the kickback scheme with Ibeabuchi. *See* § 371; 42 U.S.C. § 1320a-7b(b)(1), (2); *Eghobor*, 812 F.3d at 362. Duruji presented himself as the diagnosing and enrolling physician, discussed the payment for new patients with a recruiter, paid new and re-enrolling patients as well as recruiters of other new patients, and provided cash to other recruiters with which they were to pay new enrollees. Additionally, a reasonable jury could infer Duruji's awareness of the illegality of the kickback payments because, out of fear of legal consequences, he provided cash to other recruiters to pay new enrollees; because of the reference to payments in the recorded phone call; and because of the evidence that he gave new patients cash in a hotel room bathroom where he purported to examine them for enrollment. *See United States v. Gibson*, 875 F.3d 179, 188 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2664 (2018).

To the extent that Duruji challenges the sufficiency of the evidence showing that he also solicited and received kickbacks himself for enrollees, the Government did not have to prove that the conspiracy involved violations of each of the two subsections of § 1320a-7b(b). *See United States v. Mauskar*, 557 F.3d 219, 229 (5th Cir. 2009); *United States v. Mann*, 493 F.3d 484, 492 (5th Cir. 2007). Viewing the evidence in the light most favorable to the Government, the evidence supports the jury's conclusion that Duruji understood and willfully participated in the illegal kickback scheme. *See Eghobor*, 812 F.3d at 361-62.

Duruji's challenge to the sufficiency of the evidence supporting his conviction of aiding and abetting health care fraud, which focuses on his

interactions with one Koby patient, is equally unavailing. According to Duruji, the Government failed to produce evidence showing that Duruji certified the individual for home health service with the intent to defraud Medicare, signed either a physician's order or certification for home health care, caused the creation of an initial Medicare care assessment for the patient, or caused the creation of a care plan for her.

The absence of Duruji's signature on the formal documents, however, does not counter the evidence that he knew about and willingly participated in the conspiracy generally and in relation to one particular patient. *See United States v. Umawa Oke Imo*, 739 F.3d 226, 235 (5th Cir. 2014). In addition to the evidence recited above that Duruji understood and worked to further the Medicare fraud conspiracy generally, the Government produced evidence of Duruji's interactions with this patient in the context of the conspiracy. Duruji, while working with Ibeabuchi to prepare for certification individuals brought to them by their recruiters, visited the patient and her husband at home, examined both on their front porch, recruited the husband to bring in further Medicare beneficiaries for enrollment, and, upon the couple both signing up with Koby, either paid them or was present as Ibeabuchi paid them cash for signing up. Thereafter, Koby billed Medicare for services for the wife, although she did not receive the services. Moreover, because we view the evidence in the light most favorable to the verdict, we accord credibility, as the jury did, to Jack Smart's testimony that Willie Smart did not need assistance with the activities of daily living. *See United States v. Lopez-Urbina*, 434 F.3d 750, 757 (5th Cir. 2005). A reasonable jurist could conclude the Government established beyond a reasonable doubt that health care fraud occurred and that Duruji associated with the conspiracy, actively participated in it in regard to the

referenced patient, and sought to make the fraud successful. *See Lopez-Urbina*, 434 F.3d at 757.

In the alternative to his challenges to his convictions, Duruji contends that the district court erred in calculating the loss and restitution amounts. Duruji did not raise in the district court the challenges he asserts here, and both the loss amount and the restitution award are therefore reviewable only for plain error. *See United States v. Lozano*, 791 F.3d 535, 537 (5th Cir. 2015); *United States v. Nesmith*, 866 F.3d 677, 679 (5th Cir. 2017). The guidelines loss calculation and the actual loss for purposes of restitution are both findings of fact. *See United States v. Brown*, 727 F.3d 329, 340-41 (5th Cir. 2013); *United States v. Read*, 710 F.3d 219, 231 (5th Cir. 2012). Such "questions of fact capable of resolution by the district court can never constitute plain error." *United States v. Chung*, 261 F.3d 536, 539 (5th Cir. 2001) (internal quotation marks and citation omitted); *see United States v. Castellon-Aragon*, 772 F.3d 1023, 1026 (5th Cir. 2014).

The judgment of the district court is AFFIRMED.