# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 17, 2025

Lyle W. Cayce
Clerk

No. 24-60347

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

OMAR VILLACORTA,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:22-CR-32-2

_____

Before HAYNES, HO, and OLDHAM, *Circuit Judges*.

PER CURIAM:*

A jury found Omar Villacorta guilty of two drug-related charges. Villacorta appeals his conviction. We AFFIRM.

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-60347

## I.     Background

During trial, the government introduced evidence of the following.[1] Confidential source Anthony Hudson arranged the purchase and delivery of 110 pounds of methamphetamine for November 4 at the Love's Truck Stop in Batesville, Mississippi. Villacorta and Enrique Rivera drove Rivera's tractor-trailer rig from the West Coast to Mississippi with meth and fentanyl in the cabin of the truck. Both Rivera and Villacorta kept in contact with Hudson during the drive.

On November 4, Rivera and Villacorta arrived at Love's and drove around the area, performing what agents believed to be counter-surveillance. They eventually parked on the access road near Love's. Rivera went inside Love's and left Villacorta with the truck.

When Hudson arrived, he called Rivera, who told Hudson that Hudson should approach the truck on the access road, where he would meet another person. As Hudson approached the truck, Villacorta waved him down. Villacorta told Hudson to move his vehicle around to the cab of the truck so he could load the drugs. Villacorta also pointed out to Hudson a vehicle with tinted windows he correctly suspected was law enforcement. Villacorta then told Hudson where the bags of meth were located.

Officers arrested Villacorta and Rivera. Agents found 111 pounds of meth in two suitcases near where the truck was parked and three kilograms of fentanyl located in a cabinet behind the driver's seat.

––––––––––––––––––––––––––––––––––

[1] Villacorta has a different interpretation of some of the evidence, but we must view the evidence in the light most favorable to the prosecution when evaluating the sufficiency of the evidence. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

No. 24-60347

At trial, Villacorta disclaimed any involvement in the scheme, and testified that he believed Hudson was there to deliver a prostitute.

After the district court submitted the case to the jury, the jury twice said it was hung. After the district court gave a modified *Allen*[2] charge, the jury returned a guilty verdict on both counts: conspiracy to distribute an amount in excess of 50 grams of meth, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) (Count One), and aiding and abetting the possession with intent to distribute more than 400 grams of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 (Count Two). Villacorta appeals his conviction.

## II.    Discussion

Villacorta challenges (1) the sufficiency of the evidence with respect to Count Two, (2) the district court's refusal to issue a jury instruction proposed by Villacorta, and (3) the district court's *Allen* charge.

### A.    Sufficiency of the evidence

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis removed). Our review is "highly deferential to the verdict." *United States v. Gulley*, 526 F.3d 809, 816 (5th Cir. 2008) (per curiam) (citation omitted).

Villacorta challenges his conviction on Count Two—aiding and abetting the possession with intent to distribute over 400 grams of fentanyl. The elements for possession with intent to distribute are that the defendant (1) knowingly (2) possessed over 400 grams of fentanyl (3) with intent to

---

[2] *See Allen v. United States*, 164 U.S. 492 (1896).

No. 24-60347

distribute it. *See United States v. Richardson*, 848 F.2d 509, 511 (5th Cir. 1988). To find a defendant guilty of aiding and abetting the possession with intent to distribute fentanyl, the jury must find that the defendant associated with and participated in the criminal venture and sought by action to make the venture successful. *United States v. Infante*, 404 F.3d 376, 385 (5th Cir. 2005).

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found each essential element of the crime beyond a reasonable doubt. First, the government presented evidence that Villacorta actively participated in a scheme to deliver large quantities of drugs. The evidence shows that Villacorta drove with Rivera from the West Coast to Mississippi with the drugs in the cab and that Villacorta coordinated with Hudson during the drive. At Love's, Villacorta waved Hudson down and gave instructions for the pickup. A rational jury could conclude that Villacorta participated in the delivery scheme.

Second, officers found the fentanyl in the cabinet behind the driver's seat—it was readily accessible and not hidden. In other words, Villacorta drove across the country with a large quantity of fentanyl right behind him.

Third, the jury could have rationally concluded that Villacorta's explanation—that he thought Hanson was delivering a prostitute—was implausible, which could rationally bolster an inference of guilty knowledge. *See Richardson*, 848 F.2d at 513 ("[A] less-than-credible explanation is part of the overall circumstantial evidence from which possession and knowledge may be inferred." (citation modified)).

This evidence, when combined, allowed the jury to rationally conclude that Villacorta knew that the fentanyl was in the cab of the truck, knew that the fentanyl was going to be sold, and participated in the venture. The evidence is sufficient as to Count Two.

### B.     Proposed jury instruction

Villacorta asked the district court to read the following jury instruction:

> The government may not rely only upon Mr. Villacorta's ownership and control of the vehicle to prove he knew that he possessed a controlled substance. While these are factors you may consider, the prosecutor must prove there is other evidence indicating Mr. Villacorta's guilty knowledge of a controlled substance hidden in the vehicle.

We have reversed a district court's failure to provide similar instructions in cases where officers found drugs in a hidden compartment in a vehicle during a random search. *See United States v. Pennington*, 20 F.3d 593, 600 (5th Cir. 1994) (drugs found in trailer of a tractor-trailer rig during a random border checkpoint search). Here, unlike those hidden compartment cases, at least some of the drugs were "easily and quickly accessible." *United States v. Larman*, 547 F. App'x 475, 483 (5th Cir. 2013) (per curiam). Far from being cleverly hidden and inaccessible, *contra United States v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir. 1990), the drugs were in a cabinet behind the driver's seat in the cab of the truck for the entirety of the cross-country haul. Further, the prosecution did not rely on control of the vehicle to make its case; it instead presented evidence that Villacorta knew about the drug operation, travelled across the country with drugs in the car, and had previously been identified as a facilitator to a drug trafficking organization. Accordingly, the instruction was unnecessary, and the district court did not abuse its discretion in refusing the give the instruction. *See Larman*, 547 F. App'x at 483 (concluding jury instruction unnecessary because it was not a hidden compartment case).

### C.   *Allen* charge

The term "*Allen* charge" refers to "supplemental instructions urging a jury to forego their differences and come to a unanimous decision." *United States v. Eghobor*, 812 F.3d 352, 357 n.2 (5th Cir. 2015) (citation omitted). We review the use of an *Allen* charge for abuse of discretion. *United States v. Andaverde-Tinoco*, 741 F.3d 509, 515 (5th Cir. 2013). On appeal, we ask whether "(1) any semantic deviation from approved *Allen*-charge language was so prejudicial that it requires reversal and (2) the circumstances surrounding the use of the charge were coercive." *Id.* In evaluating an *Allen* charge's coercive effect, we consider the totality of the circumstances. *Id.* at 517. Certain factors weigh against finding coercion: "(1) the time lapse between the charge and the jury's decision was not unduly short; (2) the charge was not given prematurely; and (3) the jurors were not required to deliberate for an unreasonable length of time before the charge was given." *Eghobor*, 812 F.3d at 359 (citation modified).

Here, the district court submitted the case to the jury, and the jury began deliberating on Friday afternoon. At the end of the day, the district court thought that the jury had reached a verdict. Instead, the jury told the district court it was "hung." The district court told the jury: "Because you-all have not reached a unanimous verdict, I'm going to ask you to go back to the jury room for now. Let me speak with the attorneys."

Soon after the jury left the room, the jury sent a note saying that a juror needed his medicine. The district court decided to send the jury home and instructed the jury to continue deliberating on Monday:

> Having consulted with the attorneys, what we're going to do, given this note, is excuse you-all for today, and then I made the decision that I want you to come back and continue to deliberate to the extent that you said that you could not all reach a unanimous decision. I think that that is the best thing

to do given that you-all have not reached a unanimous decision. I think if you go back and review the evidence further, review the Court's instructions further—because, when you think of it, you-all have been here since Tuesday. It's a lot of information to digest. I do not want you to make this decision in a hurry just because it's Friday. . . . But as you know, this is a very serious matter. And I don't want you-all to rush it. . . . But I do have faith that if you-all come back well-rested Monday and have the time to refocus and look at the evidence and the instructions, I think there's a possibility that you could reach a unanimous decision. So that is what I would like you-all to do.

The jury deliberated all day Monday until it announced at 2:20 p.m. that the jury was "deadlocked" and "[i]t is hopeless to reach a verdict." The district court instructed the jury to return the following day.

The next day, the district court gave a modified *Allen* charge that largely tracked our pattern instructions. *See* Fifth Circuit Pattern Jury Instructions (Criminal) § 1.54 (2024). Four hours later, the jury returned a guilty verdict on both counts.

According to Villacorta, the district court issued four *Allen* charges: (1) on Friday when the court told the jury to step out while the court talked to the attorneys, (2) on Friday when the court told the jury to continue deliberating on Monday, (3) on Monday when the court told the jury to return the next day, and (4) on Tuesday when the court gave the modified *Allen* charge. However, the first and third instructions were not *Allen* charges—they were mere instructions on where to go and what to do while the court handled trial matters. They had no risk of coercive effect.

The second instruction was also not coercive. The instruction did not include the most troublesome features of the *Allen* charge—"the exhortation to the minority to reexamine its views in light of the majority's arguments,

7

[the reminder to] the jury of the nature of their duty and the time and expense of a trial, and [the exhortation] to try again to reach a verdict." *Montoya v. Scott*, 65 F.3d 405, 409–10 (5th Cir. 1995) (citation modified); *United States v. Warren*, 594 F.2d 1046, 1050 (5th Cir. 1979) (explaining that an instruction to continue deliberating was not a traditional *Allen* charge). Further, the instruction did not "indicate[] that only unanimous agreement is acceptable." *United States v. Bass*, 490 F.2d 846, 854 (5th Cir. 1974), *overruled on other grounds by United States v. Lyons*, 731 F.2d 243, 246 (5th Cir. 1984) (en banc). Instead, the court merely highlighted the "*possibility* that [the jury] *could* reach a unanimous decision" (emphasis added) upon further deliberation. *See Coleman v. Quarterman*, 456 F.3d 537, 548 (5th Cir. 2006) ("It is not only permissible but proper for a trial judge to ask a jury to continue deliberating if it appears that further deliberation might be fruitful in helping the jury reach a unanimous verdict.").

Finally, the district court did not abuse its discretion in giving the modified *Allen* charge. The instruction largely tracked our approved language, and Villacorta does not assert that any semantic deviation was prejudicial. Further, the circumstances surrounding the charge did not render it coercive—the four and a half hours between the charge and the jury's decision was not unduly short, *United States v. Bottom*, 638 F.2d 781, 788 (5th Cir. Unit B Mar. 1981) (three hours not unduly short); the charge was not given prematurely, *United States v. Thomas*, 567 F.2d 638, 643 (5th Cir. 1978) (giving charge after jury reports an impasse not premature); and the two days the jurors deliberated before the court gave the charge was reasonable, *see United States v. Miles*, 360 F.3d 472, 482–83 (5th Cir. 2004) (issuing *Allen* charge four days into jury's deliberations was not unreasonable).

In sum, the district court did not abuse its discretion.

No. 24-60347

## III.　Conclusion

For the reasons above, we AFFIRM.

No. 24-60347

ANDREW S. OLDHAM, *Circuit Judge*, concurring in the judgment:

I concur in the judgment because the district court did not give an unconstitutionally coercive *Allen* charge. I write separately because I continue to have concerns about our *Allen* precedent. *See United States v. Cabello*, 33 F.4th 281, 292–95 (5th Cir. 2022). As I have explained, this circuit's *Allen* charge doctrine is "a mess." *Id.* at 293.

For one, our multi-prong test for whether an *Allen* charge is coercive is internally inconsistent. The first factor asks whether a charge is premature. *United States v. Eghobar*, 812 F.3d 352, 359 (5th Cir. 2015). And the second prong asks whether the jurors had to deliberate for an unreasonable length of time. *Ibid.* So the first two factors appear to point in opposite directions, or at best call for a "Goldilocks principle" that is "unknowable to a district court *ex ante* and unreproducible *ex post.*" *Cabello*, 33 F.4th at 293.

What's more, this test is also premised on a logical fallacy: That a short gap between an *Allen* charge and jury verdict increases the likelihood that a conviction resulted from the district judge's statement. *Ibid.* There is zero evidence that is true, since defendants only appeal *convictions*, and the Government cannot appeal acquittals. *Ibid.* So there may well be times where an *Allen* charge results in nearly instant acquittals—and our court is constitutionally disabled from hearing such cases. Thus, we have no reason to believe that the time between charge and conviction says anything about coercion at all.

All that to say, our *Allen* charge jurisprudence leaves much to be desired. *Cf. Wong v. Smith*, 562 U.S. 1021, 1023 (2010) (Alito, J., dissenting from denial of certiorari).

10